UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEMERSON DAVID SANCHEZ LEMUS,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, CALIFORNIA CITY DETENTION FACILITY, *et al.*,<br><br>Respondents. | Case No.  1:26-cv-03557  (VC)<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. Nos. 1, 2 |

This habeas action concerns the detention of Petitioner Hemerson David Sanchez Lemus, a noncitizen who has lived in the United States for over ten years. *See* Dkt. 13-1 ¶ 2. Based on the Government's new interpretation of 8 U.S.C. § 1225(b)(2) as mandating detention for all noncitizens present in the United States without admission, Petitioner was detained without any finding of changed circumstances demonstrating that he was a flight risk or danger to the community. This matter is before the Court on Petitioner's writ of habeas corpus and motion for a temporary restraining order. *See* Dkt. 1, 2. For the reasons explained below, the Court GRANTS Petitioner's writ of habeas corpus and resolves Petitioner's motion for temporary restraining order as moot.

## I.  BACKGROUND

Petitioner is a citizen of Honduras who entered the United States as a minor through the Hidalgo, Texas Port of Entry on September 17, 2016 with his mother. Dkt 7-1 at 2.  From the Port, he and his mother were referred to U.S. Customs and Border Patrol ("CBP") "Passport Control Secondary for status verification and possible asylum case." *Id*. at 2. Petitioner explained to the CBP

Officer that he and his mother left Honduras "because of the harassment and death threats he faced" from individuals seeking to recruit him into a gang. *Id*. at 3.

Records submitted to the Court by Petitioner and Respondents do not indicate whether Petitioner and his mother were paroled into the United States or released on their own recognizance following their interview with the CBP Officer. However, Petitioner has continued to live in the United States since entering through the Hidalgo, Texas Port of Entry, and has begun working as a plumbing mechanic, has gotten married, and had a child who he supports financially. Dkt. 13 ¶¶13–14; Dkt. 1–18. He has no criminal history. Dkt. 1 ¶ 7.

Following his entry into the United States, Petitioner's mother applied for asylum on his behalf. Dkt. 13 ¶¶3–4. Petitioner claims, however, that his mother stopped attending their asylum hearings, Dkt. 13 ¶ 5. As a result, his asylum application was denied, and he was ordered removed in absentia on January 9, 2018. Dkt. 7-1 at 3. Petitioner moved to reopen the removal proceedings on April 3, 2019. *Id*. This motion was granted, though the immigration judge subsequently dismissed the case. *Id*.

Petitioner was re-detained by Immigrations and Customers Enforcement ("ICE") on April 1, 2026 while fishing, and placed into removal proceedings shortly thereafter. *Id*. ¶ 4; Dkt. 7-3. He is now being held at the California City Immigration Processing Center. *Id*. ¶ 10.

## II.   DISCUSSION

On May 8, 2026, Petitioner filed a petition for writ of habeas corpus, arguing that his re-detention without a finding of flight risk or danger violates the Immigration and Nationality Act ("INA") (count 1) and the due process clause of the Fifth Amendment (count 2). *Id*. at 9–10. He requests that the Court either grant his immediate release or order a bond hearing before an immigration judge. *Id*. at 10. In Respondents' opposition, the Government relies entirely on its new interpretation of 8 U.S.C.§ 1225(b)(2) ("Section 1225") as mandating Petitioner's detention, a position Petitioner disputes. *See* Dkt. 7.

### A.    Mandatory Detention Under 8 U.S.C. § 1225(b)(2)

The primary disagreement between the parties is whether Petitioner is subject to discretionary release pursuant to 8 U.S.C. § 1226(a) ("Section 1226"), or if Petitioner is subject to mandatory detention under Section 1225 as an "applicant for admission[.]" Dkt. 7 at 1. This Court—as well as the majority throughout the United States—have already concluded that applying Section 1225 to non-citizens like Petitioner who are re-detained within the interior of the United States after living at liberty for many years "(1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, 801 F.Supp.3d 1104, 1112 (E.D. Cal. Sept. 23, 2025) (collecting cases); *see also Lopez-Campos v. Raycraft*, No. 25-1965, 2026 WL 1283891, at *4–11 (6th Cir. May 11, 2026); *Barbosa da Cunha v. Freden*, No. 25-3141-PR, 2026 WL 1146044, at *4–9 (2d Cir. Apr. 28, 2026); *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, No. 25-3050, 2026 WL 1223250, at *21 (7th Cir. May 5, 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, No. 25-14065, 2026 WL 1243395, at *21 (11th Cir. May 6, 2026); *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1304 (W.D. Wash. Sept. 30, 2025); *Menjivar Sanchez v. Wofford,* No. 1:25-CV-01187-SKO (HC), 2025 WL 2959274, at *3–7 (E.D.Cal. Oct. 17, 2025) (collecting cases); *Shoimov v. Chestnut*, No. 1:25-CV-1603 CSK, 2026 WL 35624, at *4 (E.D. Cal. Jan. 6, 2026); *Singh v. Bondi et al.*, No. 1:26-CV-0396 DC CSK P, 2026 WL 469169, at *3 (E.D. Cal. Feb. 19, 2026); *Sharan S. v. Chestnut*, No. 1:25-cv-01427-KESSKO (HC), 2025 WL 3167826, at *5 (E.D.Cal. Nov. 12, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *3 (N.D. Cal. Aug. 21, 2025).

Section 1225(b) "authorizes the Government to detain certain [noncitizens] seeking admission into the country," whereas Section 1226(a) and (c) "authorize[ ] the Government to detain certain [noncitizens] already in the country pending the outcome of removal proceedings[.]" *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Given that Petitioner has been in the country for many years, has pursued asylum, started a family, was arrested in the interior

of the United States, and recently placed in removal proceedings, Petitioner falls in the latter category. As Petitioner is not a noncitizen "seeking admission" within the meaning of Section 1225(b)(2), he is subject to detention only under the provisions of Section 1226, and his continued detention pursuant to 8 U.S.C. § 1225(b)(2) is unlawful.

Given Respondents' failure to articulate a lawful basis for Petitioner's detention, the Court next turns to his due process claim.

### B.    Due Process

Petitioner's constitutional challenge is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (*citing Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

### 1.  Liberty Interest

Though neither party has specified exactly what Petitioner's custody status was between the time of his entry into the country on September 17, 2016 to the date of his detention on April 1, 2026, both parties have indicated that this is a case of re-detention. *See* Dkt. 7 at (noting that Petitioner was "re-detained" on April 1, 2026). Given that Petitioner was apparently released into the interior of the United States after he and his mother passed through the Hildalgo, Texas Port of Entry—and the fact that Respondents have only argued that § 1225(a) controls detention—the court need not determine precisely what statute applies here. Courts routinely find that where a non-citizen is detained, and then subsequently released into the interior, as Petitioner was here, they obtain a liberty interest in their continued freedom. *See Enriquez Escarcega v. Warden of the Golden State Annex Facility*, No. 1:26-CV-01012 DAD SCR, 2026 WL 480500, at *2 (E.D. Cal. Feb. 20, 2026) (noting that the court "need not determine whether § 1225 or § 1226 applies in this case because petitioner has a liberty interest in his continued release regardless of the applicable detention scheme"); *Cajina v. Wofford*, No. 1:25-CV-01566-DAD-AC (HC), 2025

WL 3251083, at *3 (E.D. Cal. Nov. 21, 2025) (same).

### 2. *Mathews* Factors

Many courts have applied the test established by the Supreme Court in *Mathews v. Eldridge* in considering what process is due in the immigration context where a noncitizen possesses a protected liberty interest in his continued release. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). There are three factors relevant to the due process inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first *Mathews* factor, the Court finds that Petitioner has a substantial private interest in remaining out of immigration custody because he has been released pending civil removal proceedings for almost ten years. In the intervening years he has developed ties in his community: he has gotten married, had a child, and works to support his family as a plumbing mechanic. "[His] detention denies [him] that freedom." *Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1111 (E.D. Cal. 2025).

Turning to the second factor, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Padilla v. U.S. Immigr. & Customs Env't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023); *Sharan*, 2025 WL 3167826, at *8 (E.D. Cal. Nov. 12, 2025) ("Under section 1226(a), petitioner would be entitled to a bond hearing, and any custody redetermination would have to be based on whether petitioner is 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk.'") (quoting *In re Guerra*, 24

I. & N. Dec. 37, 40 (BIA 2006)). The record before the Court indicates that there was no independent finding of changed circumstances by a neutral arbiter before Petitioner was re-detained. In fact, Petitioner maintains that he has a clean criminal record—a fact Respondents do not dispute. Dkt. 1 ¶ 7. As there have been no procedural safeguards to determine if Petitioner's re-detention is justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

The final *Mathews* factor also weighs in Petitioner's favor. Although the Government has a strong interest in enforcing the immigration laws, its' interest in detaining Petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 787 F. Supp. 3d at 1094. "If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so," but it must provide Petitioner with a hearing first. *Ortega*, 415 F. Supp. 3d at 970.

In light of the fact that Respondents failed to make any showing of changed circumstances before re-detaining Petitioner, he is entitled to release. *See, e.g.*, *Lepe*, 801 F. Supp. 3d at 1119 (granting immediate release where Petitioner unlawfully detained pursuant to Section 1225); *Crispin M. C. v. Noem*, No. 1:25-CV-01487-KES-HBK (HC), 2026 WL 70553, at *7 (E.D. Cal. Jan. 8, 2026) (same); *J.A.C.P. v. Wofford*, No. 1:25-CV-01354-KES-SKO (HC), 2025 WL 3013328, at *7 (E.D. Cal. Oct. 27, 2025) (same); *Lopez v. Chestnut*, No. 1:26-CV-01455-JLT-EPG, 2026 WL 640887, at *1 (E.D. Cal. Mar. 6, 2026) (same).

## III.    CONCLUSION AND ORDER

1.    Respondents immediately release Petitioner Hemerson David Sanchez Lemus (A209-423-230) from their custody.

2.    Respondents shall not impose any additional restrictions on Petitioner, unless they are determined to be necessary at a future pre-deprivation and/or custody hearing.

3.    If the Government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral

6

arbiter pursuant to section 1226(a) and its implementing regulations, at which Petitioner's eligibility for bond must be considered. This Order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal.

4.      The Clerk of the Court is directed to close this case and enter judgment for Petitioner. This Order resolves all pending motions.


**IT IS SO ORDERED.**

Dated: June 3, 2026

_____
VINCE CHHABRIA
United States District Judge